UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **THOMAS KELLY,**<br>Plaintiff,<br>vs.<br>**VALEO NORTH AMERICA, INC.,**<br>Defendant. | **2:24-CV-11066-TGB-KGA**<br>HON. TERRENCE G. BERG<br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT (ECF NO. 35),**<br>**AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT (ECF NO. 36)** |

Plaintiff Thomas Kelly brings this suit against his former employer, Defendant Valeo North America, Inc. ("Valeo"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., seeking increased pension benefits. Valeo has agreed that Kelly is entitled to a retirement benefit under the Valeo Lighting Salaried Pension Plan ("the Plan"), but the dispute is over the type and amount of the monthly pension benefit Kelly may receive under the Plan. Valeo asserts that Kelly may receive a Deferred Vested benefit under the Plan, and that the benefit is subject to actuarial reductions because Kelly retired before age 65, while Kelly asserts he is entitled to his full benefit amount as an Early Retirement benefit, without any reductions. Valeo upheld its benefit determination on appeal and Kelly now brings this lawsuit challenging that determination. ECF No. 1.

Now before the Court are Valeo's and Kelly's cross Motions for Judgment. ECF Nos. 35, 36. Responses have been filed to both motions, ECF Nos. 40, 42, and the Parties have jointly filed the Administrative Record with the Court. ECF No. 31. Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motions will be evaluated based on the briefs and the Administrative Record. For the reasons set forth below, Defendant Valeo's motion will be **GRANTED** and Plaintiff Kelly's motion will be **DENIED**.

## I. BACKGROUND

### A. Factual Background

Kelly was employed at Siemens from 1985 to 1993, and then later with Valeo North America, Inc. ("Valeo") from 1997 until he voluntarily terminated his employment on July 15, 2012, at which time he was 51 years old. ECF Nos. 31-2, 31-90.

Kelly was a participant in Valeo's pension plan, currently known as the Valeo Lighting Salaried Pension Plan ("the Plan"). ECF No. 31-24. The retirement benefits available to Kelly under the Plan are articulated in the Plan and further described in the Summary Plan Description ("SPD"). *Id.*; ECF No. 31-52. The Plan provides the Valeo Administrative Committee with "full and exclusive authority under the Plan to determine eligibility for benefits and to construe and interpret the terms of the Plan." ECF No. 31-24, PageID.1831. The Plan contains an

administrative procedure to address disputes over benefit determinations. *Id.* PageID.1830–31.

On June 30, 2011, Valeo amended the Plan to freeze accrual of Accredited Service for the purpose of determining a Member's Accrued Benefit as of June 30, 2011, but continuing, for certain Members, the accrual of Accredited Service for purposes of vesting and eligibility through a Member's termination of employment. ECF No. 31-23.

Since 2005 (seven years before Kelly terminated his employment from Valeo), Kelly has been provided with benefit calculations by Valeo at his request, providing estimates of what benefits he would be eligible to receive should he choose to retire at various ages. Kelly was informed that if he were to "Retire" under the Plan prior to age 55, he would be eligible for only a Deferred Vested Pension benefit under the Plan, subject to an actuarial reduction. ECF No. 31-14, PageID.1724 ("Deferred Vested Pensions can be started as early as age 55 but would be actuarily reduced if started earlier than age 65"); *see also, e.g.*, ECF No. 31-65, PageID.2225–26; ECF No. 31-68, PageID.2247; ECF No. 31-89, PageID.2511; ECF No. 31-118. It is undisputed that Kelly voluntarily terminated his employment on July 15, 2012, when he was 51 years old. ECF Nos. 31-90, 31-112. Thus, under the terms of the Plan as explained to Kelly, because he left Valeo's employment prior to turning 55, he was not eligible for an Early Retirement Service Pension under the terms of the Plan. ECF No. 31-24, PageID.1802.

Following the termination of his employment, Kelly disputed the Plan's calculation of his "benefit service" years and "accredited service" years under the Plan. He contended in a letter in December 2017 that his "accredited service" years should be 23.1 years, and his "benefits service" should be 14.1 years. He further asserted that he should be eligible for an Early Retirement Service Pension (i.e., receive 100% of his benefits at age 58, effective July 26, 2019). ECF No. 31-85, PageID.2415; ECF No. 31-87, PageID.2456–57.

On January 4, 2019, the Valeo Administrative Committee rendered a partially favorable decision on Kelly's disputes, explaining its decision and providing specific references to Plan provisions. ECF No. 31-118. The Committee also attached a copy of the 2011 Plan that was in effect at the time of Kelly's termination of employment, and the Actuarial Early Deferred Vested Reduction Factors table with its decision. *Id.* Valeo agreed with Kelly that his "benefit service" years under the Plan should be 14.1 years and his "accredited service" years should be 23.1. *Id.* However, Valeo affirmed the denial of Kelly's request for an Early Retirement Service Pension. Valeo explained that, under the Plan that was in effect at the time of Kelly's termination, even though his "accredited service" years meet the requirements for Early Retirement under the Plan, because Kelly terminated his employment with Valeo in 2012 at age 51, instead of at age 55 or older, he was not eligible for the Early Retirement Service Pension. *Id*. Kelly was instead qualified for a

Deferred Vested Pension, and such a benefit was subject to an actuarial reduction, as detailed in the Actuarial Early Deferred Vested Reduction Factors table from the Plan attached to the letter. *Id.* Valeo explained that if Kelly elected to begin benefits at age 58, a reduction factor of 56.7% would apply. *Id.*

After this decision on his appeal, Kelly stated that he agreed with Valeo's determination regarding his years of service, but not with its determination that he was not entitled to an Early Retirement Service Pension, ECF Nos. 31-127, 31-128, and he continued to seek an Early Retirement Service Pension, in spite of being advised of his ineligibility. ECF Nos. 31-130, 31-158.

As part of a long email chain regarding his claim, Kelly also broadly requested from Valeo on May 16, 2019, "All Pension Plan documents fin [sic] your possession from 2011 through 2019 (current as of today)" and calculations regarding his average annual pay related to the estimates provided to him separately. ECF No. 130, PageID.2804.

On June 5, 2019, Valeo provided Kelly with a copy of the SPD for the 2011 Plan that governed his benefits, as well as the requested calculations. ECF Nos. 31-130 to 31-132 (email stating SPD and calculations are attached, and attachments). A copy of the 2011 Plan and applicable actuarial reduction factors table had previously been sent to Kelly six months prior with the January 4, 2019 appeal decision letter. ECF No. 31-118. Valeo asserts that these two productions provided Kelly

with all Plan documents relevant to his benefit determination. Kelly asserts that his request for "all" pension plan documents from 2011–2019 was not fulfilled, and, despite evidence showing that he did receive the Actuarial Early Deferred Vested Reduction Factors table in January of 2019, he repeatedly states that he did not receive it.

Kelly was also eligible to participate in the smaller Valeo Sylvania, LLC Pension Preservation Plan ("PPP") during his employment. PPP Plan, ECF No. 31-149; ECF No. 31-160, PageID.2933. Under the PPP, Kelly was required to commence benefits at age 55 unless he elected an alternate commencement date prior to 2009. ECF No. 31-149, PageID.2876. Kelly never selected an alternate date prior to 2009, never provided the relevant information to Valeo to facilitate the payment of his PPP benefits starting at age 55, and never appealed any determination made by Valeo of his PPP benefits calculation.

The form of Kelly's benefits under the PPP depends on his marital status as of the benefit commencement date (i.e., August 1, 2016, the first of the month following his turning 55 years old). ECF No. 31-149, PageID.2875–76. If Kelly was married as of August 1, 2016, his benefit is to be paid as a 50% Joint and Survivor annuity. *Id.* Valeo explained to Kelly on September 27, 2023 that it needed proof of his marital status as of August 1, 2016 to process his make-up payments and continuing benefits under the PPP. ECF No. 31-160, PageID.2933. Because benefits are to commence at age 55 but, to date, Kelly has never made any written

request for benefits as required by the PPP, Valeo has tracked his accumulating benefits under the PPP to provide as "make-up" payments once he provides the relevant information. *Id.*; ECF No. 31-166; ECF No. 31-149, PageID.2881 ("Requests for Benefits").

Rather than provide the relevant information and request his benefits under the PPP plan's terms, Kelly's counsel responded to Valeo on October 30, 2023, claiming that Valeo's estimates were "not accurate as my client is single." ECF No. 31-163, PageID.2941. Valeo asserts that it only recently learned of Kelly's true marital status as of August 1, 2016, when Kelly's divorce decree from the Ontario Superior Court of Justice was produced to Valeo on July 16, 2025 after repeated requests during the pendency of this lawsuit. *See* ECF No. 31-88. The divorce decree did not finalize a divorce for Kelly until January 19, 2018, meaning that as of August 1, 2016, he was married. *Id.* PageID.2462. The divorce decree itself makes no mention of the PPP. *See id.*

### B. Procedural History

Kelly filed the Complaint in this case on April 24, 2024, alleging three counts: Count I to recover for "Violation of ERISA"; Count II for Breach of Contract; and Count III for a Declaratory Judgment. Complaint, ECF No. 1. Following the Court's ruling on Valeo's motion to dismiss, only two claims remain: (1) Kelly's claims for an alleged wrongful denial of benefits under § 1132(a)(1)(B) and (2) for failure to

provide documents after request under §§ 1024(b)(4), 1132(c). ECF No. 13.

Pursuant to the Court's Scheduling Orders, ECF Nos. 14, 19, 28, the Parties filed respective Statements Regarding the Standard of Review, ECF Nos. 16, 17, the Court has denied Plaintiff's request for a Procedural Challenge, ECF No. 27, and the Parties have jointly filed the Appendix for the Administrative Record. ECF Nos. 30, 31.

The Parties have now filed cross Motions for Judgment on the Administrative Record. ECF Nos. 35, 36.[1] Responses have been filed to each of the motions. ECF Nos. 40, 42.

---

[1] The Court is obliged to point out that Plaintiff's Motion repeatedly cites to quotations from several cases that are not contained in the actual opinions. Specifically, Plaintiff "quotes" from three Supreme Court opinions and one Sixth Circuit opinion, *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 2006), *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989), and *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–47 (1985), throughout his Motion, but the quoted passages appear nowhere in the cited cases. *See* ECF No. 36, PageID.3464, 3466, 3469, 3472. Whether the presence of these non-existent quotes is the result of an AI hallucination, or some other kind of careless draftsmanship, it is not acceptable and could be considered a violation of Plaintiff's counsel's obligations to the Court under Rule 11 of the Federal Rules of Civil Procedure. If it happens again, sanctions will be necessary.

## II. LEGAL STANDARD

### A. Denial of Benefits Under § 1132(a)(1)(B)

The appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators depends on the language of the plan itself. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).[2] Where the plan grants discretionary authority to determine eligibility for benefits, "[t]rust principles make a *deferential standard* of review appropriate." *Id.* (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Here, the Plan explicitly confers discretionary authority on the administrator to make benefit determinations and to construe the Plan terms:

> … The Administrative Committee has full and exclusive discretionary authority under the Plan to determine

[2] Kelly asserts in his Motion for Judgment and in his response to Valeo's motion that summary judgment standards apply to his denial of benefits claim under ERISA. *See* ECF No. 36, PageID.3463; ECF No. 42, PageID.3662, 3664. However, the Sixth Circuit has stated that "Rule 56 does not apply to the adjudication of ERISA denial-of-benefit claims." *Kramer v. Am. Elec. Power Exec. Severance Plan*, 128 F.4th 739, 752 (6th Cir. 2025); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (concluding that "the concept of summary judgment is inapposite to the adjudication of an ERISA action"). The Court thus construes the Motions as motions for judgment on the administrative record. As discussed herein, under this standard, the Court considers only the evidence contained within the administrative record with respect to Kelly's denial of benefits claim. *See Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 607 (6th Cir. 2016); *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010). Accordingly, it will not consider the exhibits to the Parties' motions.

> eligibility for benefits and to construe and interpret the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect unless it can be shown that the interpretation or determination was arbitrary and capricious.

ECF No. 31-24, PageID.1831. Accordingly, a deferential standard is proper.

A deferential standard requires upholding a denial of benefits unless the decision was arbitrary and capricious. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064–65 (2014). The arbitrary and capricious standard is "extremely deferential and has been described as the least demanding form of judicial review." *Id.* at 1064 (quoting *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107–08 (7th Cir. 1998)). The arbitrary and capricious standard is met "if [the administrator's decision] is the result of a deliberate, principled reasoning process and ... is supported by substantial evidence." *Balmert v. Reliance Std. Life Ins. Co.*, 601 F.3d 497, 501 (6th Cir. 2010) (citation modified); *see also Autran v. Procter & Gamble Health & Long-Term Disability Benefit Plan*, 27 F.4th 405, 411 (6th Cir. 2022) (explaining that the Court "must uphold an administrator's benefits decision" where it is based on a "deliberate, principled reasoning process" and "supported by substantial evidence.") (citation modified). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 549 (6th Cir.

2020) (quoting *General Med., P.C. v. Azar*, 963 F.3d 516, 520 (6th Cir. 2020)).

Courts reviewing denials of benefits consider only the evidence contained within the administrative record. *See Okuno*, 836 F.3d at 607; *Schwalm*, 626 F.3d at 308. The arbitrary and capricious standard is not "without some teeth," nor is it a mere rubber stamp applied to approve plan administrator decisions. *See McClain*, 740 F.3d at 1064. Ultimately, though, the burden is on Plaintiff to prove that the Plan Administrator's decision was arbitrary or capricious. *See Farhner v. United Transp. Union Discipline Income Prot. Prog.*, 645 F.3d 338, 343 (6th Cir. 2011).

**B. Failure to Respond to Written Request**

ERISA requires an administrator to provide an employee with specified information upon written request. 29 U.S.C. § 1024(b)(4). An administrator that fails to comply with such a request within thirty days is subject to administrative penalties, unless that failure is the result of matters reasonably beyond the administrator's control. 29 U.S.C. § 1132(c)(1)(B). The decision to impose administrative penalties is committed to the sound discretion of the court. *Id.*; *see Ciaramitaro v. Unum Life Ins. Co. of Am.*, 628 F. App'x 410, 417 (6th Cir. 2015). Prejudice to the employee and bad faith of the employer are not prerequisites to imposing penalties, but can be properly considered by the court in exercising its discretion. *Ciaramitaro*, 628 F. App'x at 417–18 (citing *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1069 (6th Cir. 1994)).

Prejudice in the context of § 1132(c)(1) is concerned with "whether Plaintiffs are in a worse position because of Defendants' delays than they would have been if the required documents had been timely disclosed." *Bartling*, 29 F.3d at 1067; *see also Hinkel v. Navistar, Int'l Corp.,* No. 90-3992, 1992 WL 5435, at *4 (6th Cir. Jan.15, 1992) ("The focus of inquiry into an injury, if there be any, is upon the delay in receiving the information, not upon the denial of benefits.").

## III. DISCUSSION

### A. Denial of Benefit Claim

Valeo asks the Court to conclude that its decision was not arbitrary and capricious in determining that, according to the plain language of the Plan's terms, Kelly was not eligible for an Early Retirement Service Pension under the Plan but instead was eligible for the Plan's Deferred Vested Pension. ECF No. 35, PageID.3325–29. Kelly had appealed the Plan's calculation of his "benefit service" years and "accredited service" years and asserted that he should be eligible for an Early Retirement Service Pension at age 58, without any reductions. The Valeo Administrative Committee issued a partially favorable decision on January 4, 2019. ECF Nos. 31-118, 31-119. Valeo agreed with Kelly's "benefit service" and "accredited service" calculations, but, citing to specific Plan terms, explained that because Kelly terminated employment with Valeo on July 15, 2012, at age 51, instead of age 55 or older, he was not eligible for an Early Retirement Service Pension. *Id.*

Kelly instead qualified for the Deferred Vested Pension, subject to an actuarial reduction of 56.7% if he began benefits at age 58, according to the Plan's reduction factors table. *Id.* The issue for the Court to decide is whether this determination by the Plan was arbitrary and capricious.

The Court will start with the Plan's terms and definitions:

- A "Member" "means an Employee who has met the requirements for membership as set forth in Article III." ECF No. 31-24, PageID.1794 (Art. II, Sec. 27).

- Article III on "Membership" provides that "[a]ny Employee who is in the service of an Employing Company[3] shall become a Member in the Plan as of the first day of the Eligibility Computation Period in which he first qualifies as an Employee under Section 17 of Article II." *Id.* PageID.1796 (Art. III, Sec. 1).

- "Employee" in turn is defined as "any person who *is employed by one or more Employing Companies* in a salary-rated position, who receives a *regular and stated compensation* other than a pension, other than a retainer, from an Employing Company and who *completes at least 1,000 Hours of Service* during any Eligibility Computation Period…." *Id.* PageID.1792 (Art. II, Sec. 17 (emphases added)).

- "Retire," "Retired" or "Retirement" "means either (a) the separation of a Member *from employment with an Employing Company* under such circumstances that he is entitled to receive a Pension, except that a Member who becomes entitled to a Deferred Vested Pension shall be deemed to Retire on the last day of the month immediately preceding his Pension Commencement Date …." *Id.* PageID.1795 (Art. II, Sec. 39 (emphasis added)).

[3] "Company" is defined as "Valeo Sylvania, L.L.C." and "Employing Companies" "means the Company and any Affiliated Company[.]" ECF No. 31-24, PageID.1790, 1793 (Art. II, Secs. 8, 18).

- A "Deferred Vested Pension" "means the payments under the Plan to a Member who is eligible by reason of age and Vesting Service, pursuant to Section 5 of Article V and Section 3 of Article VI." *Id.* PageID.1791 (Art. II, Sec. 11).

Under the terms of the Plan, "[a]ny Member who has attained age 55 and has completed 15 years of Accredited Service may Retire, and shall be entitled to a Service Pension." *Id.* PageID.1802. Valeo determined, based on the Plan's terms, that to be eligible for this Service Pension, the "Member" must be an "Employee" of Valeo who has "attained age 55" at the time they "Retire" and separate from the Company. In this case, Valeo determined that Kelly "separate[ed]" from employment with Valeo on July 15, 2012 at the age of 51, not 55, and thus he was not eligible for an Early Retirement Service Pension under the Plan's terms.

The Plan provides that "[a]ny Member whose employment with the Company terminates other than by death after 5 or more years of Vesting Service or due to the closing of the facility where such Member is employed, but who cannot qualify for a Service Pension or Disability Pension, shall be entitled to a Deferred Vested Pension," with the "normal Pension Commencement Date" as the former Member's "Normal Retirement Date" (i.e., age 65). ECF No. 31-24, PageID.1803 (Art. III, Sec. 5); *see also id.* PageID.1794 (Art. II, Sec. 28). A "Member" may elect to commence his Deferred Vested Pension prior to his "Normal Retirement Date" (age 65), "on the first day of any month following the

date he attains age 55," but "the amount of such Deferred Vested Pension shall be reduced by multiplying his Deferred Vested Pension at his Normal Retirement Date by the appropriate factor as indicated in Table I – Early Commencement Factors." *Id.* PageID.1803 (Art. V, Sec. 5), 1805–06 (Art. VI, Sec. 3).

Pursuant to these Plan terms, when Kelly, a former Valeo employee, requested to commence his pension benefits at age 58, Valeo determined that he was eligible for a Deferred Vested Pension, subject to a reduction factor of 56.7%, according to the Plan's applicable reduction factors table that "takes into account [the person's] age and life expectancy at the time payments are scheduled to start." 2013 SPD, ECF No. 31-52, PageID.2123 (actuarial reduction factors table); *see also* ECF No. 31-118, PageID.2694.

The Court finds that this determination is based on a "deliberate, principled reasoning process" and "supported by substantial evidence" and thus must be upheld. *See Autran*, 27 F.4th at 411. This determination by Valeo was based on the Plan's plain language and offered a "reasoned explanation" for its determination that Kelly was not entitled to an Early Retirement Service Pension because he left his employment with Valeo before age 55. *See Kolpacke v. CSX Pension Plan*, 554 F. Supp. 2d 733, 742 (E.D. Mich. 2007) (Roberts, J.), *aff'd*, 527 F.3d 538 (6th Cir. 2008) (holding Administrative Committee's determination that terminated vested employee was not entitled to an early retirement

Pension was not arbitrary and capricious because the employee left his salaried position at age 54, and the plan required that Members be 55 years or older to elect to receive an early retirement Pension, and thus "Plaintiff simply had not attained the age necessary for early retirement under the Plan").

Similarly, the Plan's determination that Kelly's Deferred Vested Pension was subject to an actuarial reduction because he retired before age 65 was a reasoned application of the Plan's terms and was not arbitrary and capricious. *See Radell v. Michelin Retirement Plan*, 578 F. App'x 483, 490 (6th Cir. 2014) (upholding decision to apply an actuarial reduction to disability benefits to an employee who chose to retire early, even where the plan's terms were deemed ambiguous, because company's interpretation of the plan's language was reasonable).

Kelly fails to show that Valeo's pension determination was arbitrary and capricious. His Motion and Response to Valeo's Motion are somewhat difficult to follow but he appears to argue that Valeo improperly determined that Kelly was entitled to 14.1 years of benefit service for purposes of calculating the amount of his benefit instead of 23.1 years. ECF No. 36, PageID.3469. However, the Plan provides that a Member may have a different value of "Accredited Service" used for determining vesting and eligibility than for determining the calculation of their pension benefit. *See* 2011 Pension Plan, ECF No. 31-24, PageID.1788 (defining "Accredited Service" differently for employment

after January 1, 2011); First Amend., ECF No. 31-23, PageID.1777 (amending Plan to freeze accrual of Accredited Service for the purpose of determining a Member's Accrued Benefit as of June 30, 2011, but continuing accrual for certain members for purposes of vesting and eligibility through a Member's termination of employment). The Summary Plan Description ("SPD") similarly explains:

> Accredited Service is used to calculate the amount of your benefit and to determine your eligibility for an early or disability retirement benefit. Your accredited service generally equals your service while you are a member of this Plan. It begins with your date of employment and continues until your employment ends because you chose to leave the Company, you retire, or you are discharged.
>
> *For purposes of determining the amount of your benefit, you do not earn accredited service after June 30, 2011. However, you continue to earn accredited service for purposes of determining eligibility for early retirement benefits*.

ECF No. 31-52, PageID.2118 (emphasis added).

Consistent with this Plan language, Valeo informed Kelly since at least 1998 that the date commencing his Accredited Service for purposes of determining pension eligibility and vesting service would be June 15, 1989, and that his Accredited Service for the purpose of his pension benefit calculation would be based on service since his date of hire, June 2, 1997. ECF No. 31-5, PageID.1616. Valeo and Kelly both agreed in 2019 that Kelly's Accredited Service for the purpose of determining pension eligibility and vesting would be from June 15, 1989 to July 15, 2012,

Kelly's termination date, or 23.1 years, and that the Accredited Services for purposes of his benefit calculation (Kelly's "benefit service") would be 14.1 years, based on a start date of June 2, 1997 and going through the plan freeze date of June 30, 2011. ECF No. 31-118, PageID.2624–25; ECF No. 31-128, PageID.2787. Accordingly, Kelly fails to show how this determination of his benefit service years was arbitrary or capricious.

To the extent Kelly argues that Valeo acted arbitrarily and capriciously in denying his appeal by relying on the Actuarial Early Deferred Vested Reduction Table to determine his benefit amount, or contends that no such table exists, ECF No. 36, PageID.3467–68, those arguments fail. The Plan plainly provides that "the amount of such Deferred Vested Pension shall be reduced by multiplying his Deferred Vested Pension at his Normal Retirement Date by the appropriate factor as indicated in Table I – Early Commencement Factors," ECF No. 31-24, PageID.1805–06, referring to the Actuarial Early Deferred Vested Reduction Factors table that was provided to Kelly with his appeals decision letter on January 4, 2019. ECF No. 31-118, PageID.2694. Kelly was expressly informed about and provided this table as early as 2005 and thereafter, including in the SPD and with the appeals decision letter. *See, e.g.,* ECF No. 31-16, PageID.1741 (stating "Deferred Vested Pensions can be started as early as age 55 but would be actuarially reduced if started earlier than age 65. The actuarial reduction factors are also attached so you can estimate your monthly vested pension at various

ages."); SPD, ECF No. 31-52, PageID.2123; ECF No. 31-65 (providing documents including "the actuarial reduction table you requested"); ECF No. 31-89, PageID.2511. Kelly's repeated assertions that he never received this Table or that it is "fictitious" are simply not supported by the record.

Kelly also argues that he was "misled" into not accepting a 2016 lump sum offer because he anticipated being eligible for a full Early Retirement Service Pension at age 58, based on his accredited service years. ECF No. 36, PageID.3459–60. However, in emails between Valeo and Kelly in November 2016 regarding his inquiry about the lump sum offer, Valeo plainly informed Kelly that he was not eligible for an Early Retirement Service Pension, stating "since you were not age 55 when you terminated employment the early reduction table you need to use is for Deferred Vested participants. I believe I sent that to you in a prior e-mail." ECF No. 31-70, PageID.2328. This is consistent with the information communicated to Kelly in the years prior to his lump sum inquiry. *See, e.g.,* ECF No. 31-65, PageID.2232 (stating on October 10, 2012 "you were not retirement eligible at termination (age 55 w/ 15 years of svc)"); ECF No. 31-68, PageID.2247 (stating on August 4, 2014 "Your employment … ended on July 15, 2012 [and] … we are informing you of your eligibility to receive a deferred vested retirement benefit.").

Finally, Kelly's argument that his receipt of deferred compensation through a separate Section 409a plan, which was paid to him as a non-

qualified benefit/distribution from 2012 through 2018, made him an "Employee" of Valeo through that time period, ECF No. 36, PageID.3456, also fails. First, Kelly admits that he was employed at Valeo "through July 15, 2012," *id.* PageID.3453, which date is well supported in the Administrative Record. *See, e.g.,* ECF Nos. 31-94, PageID.2527 ("My last date of employment was July 15, 2012."); ECF No. 31-112 (stating his Accredited Service had an "ending date of July 15, 2012."). Second, the plain language of the Plan defines an "Employee" as "any person who *is employed by one or more Employing Companies* in a salary-rate position, who receives a regular and stated compensation other than a pension, other than a retainer, from an Employing Company *and who completes at least 1,000 Hours of Service during any Eligibility Computation Period.*" ECF No. 31-24, PageID.1792 (emphases added). After his July 15, 2012 termination, Kelly was no longer "employed" by Valeo and was not "completing 1,000 Hours of Service." Kelly fails to show therefore that he was an "Employee" under the terms of the Plan after July 15, 2012. Valeo explained to Kelly that his receipt of deferred compensation under a different plan for a period of time after his employment was terminated simply does not cause him to meet the definition of "Employee" under the Plan. *See* ECF No. 31-146, PageID.2859. And tellingly, Kelly would not have been eligible to have received that deferred compensation if he had been employed after July 15, 2012, as those payments were to occur only after the end of his employment.

Accordingly, Kelly fails to show that Valeo's pension determination was arbitrary and capricious. His Section 1132(a)(1)(B) claim therefore fails and will be dismissed.

**B. PPP Claim**

Valeo argues that to the extent Kelly asserts a claim under ERISA for benefits pursuant to the Pension Preservation Plan ("PPP"), it should be dismissed for several reasons, including failure to exhaust administrative remedies, Kelly's failure to instruct Valeo regarding how he would like to proceed with his PPP benefit, or his failure to dispute that he was married as of his benefit commencement date. ECF No. 35, PageID.3329–32. Kelly disagrees with Valeo's arguments and contends that he is entitled to 100% of his PPP benefit using 23.1 years of Accredited Service. ECF No. 42, PageID.3667–73.

While the ERISA statute does not contain an administrative exhaustion requirement, the Sixth Circuit has "read an exhaustion requirement into the statute." *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 560 (6th Cir. 2017) (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998)). This exhaustion requirement "enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000) (emphasis omitted) (quoting *Makar v. Health Care Corp.*, 872 F.2d

80, 83 (4th Cir. 1989)). Ensuring a complete factual record is of "particular importance because the court in an ERISA action is limited to a consideration of the evidence which was included in the record before the plan administrator[.]" *Barix Clinics of Ohio, Inc. v. Longaberger Fam. of Cos. Grp. Med. Plan*, 459 F. Supp. 2d 617, 622 (S.D. Ohio 2005). Dismissal without prejudice is appropriate to the extent that a plaintiff has not established exhaustion. *See Falandays v. Penn Treaty Am. Corp.*, 114 F. App'x 738 (6th Cir. 2004); *Borman v. Great Atl. & Pac. Tea Co.*, 64 F. App'x 524, 528–29 (6th Cir. 2003); *Weiner v. Klais and Co.*, 108 F.3d 86, 88, 91 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Valeo asserts that Kelly never made any appeal, or exhausted any administrative remedies, regarding the PPP benefit. Valeo agrees that Kelly is entitled to a PPP payment, and accepted Kelly's years of "accredited service" calculation. But Valeo informed Kelly on September 27, 2023 that it needed information regarding his marital status as of his 55th birthday (by August 1, 2016), per the terms of the PPP. ECF No. 31-160, PageID.2933. Kelly responded on October 30, 2023, that he "is single," but failed to provide any documentation as to what his marital status was "on August 1, 2016." ECF No. 31-163, PageID.2941. Per the terms of the PPP, Kelly's present marital status is not relevant; whether he was married or single on August 1, 2016, the first month after his 55th birthday, is the relevant consideration. Valeo asserts that Kelly did not

produce a copy of his divorce decree until July 16, 2025, over a year after litigation of this matter began. The divorce decree showed that Kelly was in fact still married as of August 1, 2016. Valeo asserts that it responded to Kelly within the next month regarding that information's impact on his PPP benefit. ECF No. 35, PageID.3331.

Kelly nevertheless has failed to respond to Valeo with instructions as to how he wants to proceed with his PPP benefit, other than to demand a 100% payout. And, Kelly never appealed the determination of his PPP benefits as expressly required by the PPP, which states: "Claims for benefits shall be filed with the Administrative Committee (or its delegate) and resolved in accordance with the claims procedure in Exhibit A." ECF No. 31-149, PageID.2878, citing Ex. A at PageID.2881–83 (addressing procedures for "Filing a Claim for Benefits" and "Appealing a Claim Denial"). Valeo argues that Kelly's claim for PPP benefits should be dismissed for failure to exhaust.

Kelly does not dispute that he failed to exhaust his administrative remedies as to a claim for PPP benefits. He instead alleges that Valeo is at fault for failing to inform him of his duty to exhaust. ECF No. 42, PageID.3667. That argument is readily rejected as the PPP is an ERISA plan and the Sixth Circuit has "read an exhaustion requirement into the statute." *Hitchcock*, 851 F.3d at 560. ERISA employee-benefit plans are required to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the

appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The PPP's terms are clear and plainly afford participants a "reasonable opportunity" to apply for benefits and to appeal a benefits determination. *See* ECF No. 31-149. Kelly has not asserted that he complied in any way with the administrative process as to his PPP benefits before proceeding with that claim here in this Court. ERISA mandates that he first submit his claim to the administrative process as laid out in the PPP before he can be allowed to proceed in federal court. *See Hitchcock*, 851 F.3d at 560; *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991) ("The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court."). The Court finds that Kelly has failed to exhaust his administrative remedies with regard to a claim for PPP benefits.

Kelly argues that there are exceptions to the exhaustion requirement based on "futility of the administrative process and inadequacy of the administrative remedy." ECF No. 42, PageID.3668. Exhaustion may be excused if a plaintiff demonstrates futility—that "resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 505 (6th Cir. 2004) (quoting *Fallick*, 162 F.3d at 419). Futility must be shown by a "clear and positive indication...that [a plaintiff's] claim will be denied on appeal" and "not merely...doubt[ ] that an appeal will result

in a different decision." *Id.* (quoting *Fallick*, 162 F.3d at 419). Denial of benefits alone is insufficient to demonstrate futility. *Id.* Generally, the Sixth Circuit has applied the futility exception to exhaustion:

> (1) when the "Plaintiffs' suit [is] directed to the legality of [the plan], not to a mere interpretation of it," *Costantino v. TRW, Inc.,* 13 F.3d 969, 975 (6th Cir. 1994) (emphases omitted); *see also Fallick,* 162 F.3d at 420, and (2) when the defendant "lacks the authority to institute the [decision] sought by Plaintiffs," *Hill v. Blue Cross & Blue Shield of Mich.,* 409 F.3d 710, 719 (6th Cir. 2005).

*Dozier v. Sun Life Assur. Co. of Can.*, 466 F.3d 532, 535 (6th Cir. 2006).

On this record, Kelly has not demonstrated clear and positive evidence of the futility of exhausting administrative remedies regarding his claim for PPP benefits. Kelly does not challenge the legality of the PPP, only Valeo's interpretation of its terms and calculation of benefits under the PPP. Kelly's arguments are like those made in *Borman v. Great Atlantic & Pacific Tea Company*, where the Sixth Circuit refused to excuse exhaustion based on futility:

> Borman vaguely alleged in his complaint that he had engaged in a "lengthy period" of fruitless discussions concerning his benefit claims in controversy, and had filed some sort of unspecified claim, with unnamed officers of A&P. He has further asserted that the defendants had not timely informed him of the available internal claim and review procedures, nor had they referred him to the Pension Committee. However, in the trial court, Borman filed no affidavit nor produced any other evidence in opposition to the Eckert affidavit and the documents offered by the defendants in support of their motion to dismiss the complaint. Most importantly, Borman

> failed to evince, or even allege, that he had made any effort to adhere to A&P's formal written internal benefit claim and review procedures, or had even inquired of any A&P agent about those procedures.

64 F. App'x at 528. *See also Riverview Health Inst., LLC v. Med. Mut. of Ohio*, No. 3:07-cv-354, 2008 WL 4449482, at *7 (S.D. Ohio Sept. 30, 2008), *aff'd*, 601 F.3d 505 (6th Cir. 2010) ("While Plaintiffs describe some efforts to obtain payments from Medical Mutual of Ohio, there are no allegations detailing any efforts to pursue administrative remedies under any of ERISA plans.… [A] claimant bears the burden of proving futility beyond mere conclusory allegations.").

Like the plaintiffs in *Borman* and *Riverview Health*, Kelly fails to demonstrate a "clear and positive indication" of futility sufficient to convince the Court to excuse the exhaustion requirement. *Coomer*, 370 F.3d at 505 (quoting *Fallick*, 162 F.3d at 419). Kelly's claim for PPP benefits therefore will be dismissed without prejudice for failure to exhaust administrative remedies.

### C. Failure to Provide Documents Claim under § 1132(c)

Finally, Kelly asserts a claim for violation of 29 U.S.C. § 1132(c), which states, in relevant part:

> Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary … may in the court's discretion be personally liable to such participant or beneficiary[.]

29 U.S.C. § 1132(c)(1)(B). Kelly argues that Valeo failed to produce key documents in response to his May 16, 2019 request for "[a]ll Pension Plan documents []in your possession from 2011 through 2019." He contends that in response, Valeo produced only a copy of the SPD for the 2011 Plan, and that this response was inadequate and failed to include a number of "key documents." ECF No. 36, PageID.3457.

Valeo argues that it is entitled to judgment on Kelly's failure to provide documents claims on four grounds: (1) the claim is time-barred; (2) Kelly's request provided no "clear notice" in that triggered Valeo's obligations to provide documents; (3) even if clear notice was given, Valeo provided Kelly with all of the documents it was obligated to provide; and (4) Kelly was not prejudiced as a result of not receiving certain documents. ECF No. 35, PageID.3335–41.

**1. Kelly's § 1132(c) claim is time barred**

Valeo argues that a two-year statute of limitations applies to Kelly's failure to produce documents claim under § 1132(c), and that because Kelly requested documents on May 16, 2019, but did not file his Complaint against Valeo until April 23, 2024, nearly five years after his documents request, his claim is untimely.

"When a plan does not itself provide a limitations period, the Sixth Circuit applies the most analogous state statute of limitations of the forum state." *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 762–63 (6th Cir. 2017). Because § 1132(c) imposes a penalty for failure to comply with

the statutory requirement, courts in the Sixth Circuit have recognized that for § 1132(c) failure-to-provide-document claims, the most analogous state law cause of action is one for statutory penalties or civil forfeiture. *See, e.g.*, *Day v. S. Elec. Retirement Fund Bd. of Trs.*, No. 1:19-cv-253, 2020 WL 6937455, at *3 (E.D. Tenn. Aug. 27, 2020) (applying Tennessee statute of limitations for statutory penalty actions), *report and recommendation adopted*, 2020 WL 6928607 (E.D. Tenn. Nov. 24, 2020); *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, No. 1:15CV00020, 2017 WL 4837478, at *7 (N.D. Ohio Oct. 26, 2017), *aff'd*, 900 F.3d 284 (6th Cir. 2018) (applying applicable statute of limitations for an action for statutory penalties for a § 1132(c) claim under Ohio law); *see also Walker v. Pharm. Research & Mfrs. of Am.*, 827 F. Supp. 2d 8, 13 (D.D.C. 2011) (collecting cases in various jurisdictions holding that the most analogous statute of limitations for a § 1132(c) claim is a statutory penalty). Valeo contends that, in Michigan, the most analogous state law statute of limitations for Kelly's failure to provide documents claim under § 1132(c) is the statute for recovery of statutory penalties or forfeiture claims, which has a two-year limitations period. *See* M.C.L. § 600.5809(2). Valeo argues that Kelly requested documents on May 16, 2019, but filed his Complaint almost five years later, and that his § 1132(c) claim is therefore barred by the two-year statute of limitations.

Kelly does not dispute that the two-year limitations period applies to his § 1132(c) claim, but he raises the question of when his claim

accrued. He contends that he has "repeatedly requested Valeo's plan documents and Valeo has repeatedly failed to provide all Plan documents." ECF No. 42, PageID.3674. He contends that Valeo only produced one document in response to his request—the SPD—and that it was only through "subsequent Valeo submissions" that he became aware that there are six alleged responsive documents that were not produced to him. *Id.* While Kelly claims that he was not informed about the PPP plan and that he would not be receiving "100%" of his PPP benefits "until this lawsuit," that is not true. It is undisputed that he was informed, at the latest, on September 27, 2023 as to his own PPP benefits, ECF No. 31-160, PageID.2933, but was also informed of the PPP and its benefits generally well before that date. *See, e.g.*, ECF No. 31-146, PageID.2859 (November 2019 email regarding the "separate" pension preservation plan); ECF No. 31-68, PageID.2247 (2014 letter regarding Kelly's PPP benefit "in the amount of $143.88 per month as a Single Life annuity payable at age 65."). In addition, Kelly had been informed at least by July 2005 of the PPP plan and its terms and that his benefits would be actuarially reduced if he retired before age 65. ECF No. 31-18, PageID.1758.

Kelly argues that the statute of limitations on his § 1132(c) claim began running once he discovered, or with reasonable diligence could have discovered, the act providing the basis for his claimed injury. ECF No. 42, PageID.3674 (citing *Gragg v. UPS Pension Plan*, 55 F.4th 1059

(6th Cir. 2022)). The Sixth Circuit in *Gragg* addressed a claim under § 1132(a)(1)(B), not § 1132(c). *See Gragg*, 55 F.4th at 1061. Nevertheless, "[c]ourts have taken a common-sense approach to this task [of deciding when a plaintiff knew or had reason to know of their injury], inquiring as 'to what event should have alerted the typical lay person to protect his or her rights.'" *Roberson v. Tennessee*, 399 F.3d 792, 794 (quoting *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000)).

Applying this analysis, Kelly knew of the pension documents that Valeo had provided him in response to his inquiries as of June 5, 2019, when Valeo produced the SPD to him in response to his May 16, 2019 request for "all Pension Documents []in your possession from 2011 through 2019 (current as of today)." That is when his claim accrued, and he was not entitled to "wait and see" if any additional documents would be produced. Further, to the extent Kelly contends that Valeo has "repeatedly failed to provide all Plan documents," the Sixth Circuit and district courts within this circuit have refused to apply the continuing violations doctrine to ERISA claims. *See, e.g., Medical Mut. of Ohio v. k. Amalia Enters. Inc.*, 548 F.3d 383, 394 (6th Cir. 2008) (refusing to apply continuing violations doctrine to claim brought by insurer against insured under 29 U.S.C. § 1132(a) to recover benefits paid to insured); *Edwards v. U.S. Dep't of Energy*, 371 F. Supp. 2d 859, 869–70 (W.D. Ky. 2005), *aff'd*, 200 F. App'x 382 (6th Cir. 2006) (refusing to apply the continuing violation doctrine to claim for benefits brought under Section

1132(a)); *Day*, 2020 WL 6928607, at *2 & n.2 (collecting cases declining to apply a continuing violation theory to § 1132(c) claims); *Shahid v. Chrysler, LLC*, No. 08-CV-10871, 2008 WL 2397635, at *3 (E.D. Mich. June 11, 2008) (Cleland, J.) (refusing to apply the continuing violations doctrine to toll the limitations period in an ERISA claim brought for pension benefits).

Accordingly, taking "a common-sense approach," the June 5, 2019 production of the SPD "should have alerted" Kelly to protect his rights and assert a claim under § 1132(c) if he believed the production was inadequate. He failed to do so until he filed this lawsuit almost 5 years later, well after the expiration of the two-year statute of limitations. His § 1132(c) claim therefore may be dismissed with prejudice. *See Fallin v. Commonwealth Indus. Inc. Cash Balance Plan*, 521 F. Supp. 2d 592, 600 (W.D. Ky. 2007), *aff'd*, 695 F.3d 512 (6th Cir. 2012) (dismissing plaintiff's time-barred ERISA claim with prejudice).

**2. To the extent Kelly provided "clear notice" of a request for documents, Valeo produced responsive documents**

Under ERISA, a plan administrator "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). The administrator, however, is only obligated to provide

claimants with documents if provided with "clear notice" of the documents requested. *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 707 (6th Cir. 2014). "[T]he key question under the clear-notice standard is whether the plan administrator knew or should have known which documents were being requested," considering all "circumstances surrounding the document request." *Id.* "Courts have found that a general request for documents, without reference to specific documents, does not provide 'clear notice' unless other circumstances indicate that the party should know what documents are requested." *Reichert v. Whirlpool Corp.*, No. 3:18-cv-00001, 2020 WL 5877132, at *4 (M.D. Tenn. Oct. 2, 2020) (collecting cases). "Absent such clear notice, no document(s) need to be produced." *Id.* at *5.

Valeo argues that Kelly's broad request for "[a]ll Pension Documents []in your possession from 2011 through 2019 (current as of today)" is not specific enough to trigger the obligation under § 1132(c) to provide documents. That section requires the production upon request of "any information which such administrator is required by this subchapter to furnish to a participant or beneficiary …." 29 U.S.C. § 1132(c)(1)(B). And as stated, the statute defines the information the administrator is required to furnish as: "a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C.

§ 1024(b)(4). The question here is whether, when faced with the request to provide "[a]ll Pension Documents []in your possession from 2011 through 2019 (current as of today)," the plan administrator "knew or should have known which documents were being requested." *Cultrona*, 748 F.3d at 707.

Given the vast scope of the request, "all pension documents" for an 8-year period, with no specification as which plan documents are being sought, the Court cannot say with certainty that the plan administrator knew or should have known which documents were being requested. Consequently, the request did not provide "clear notice" of the records being sought.

Under those circumstances, it was reasonable for Valeo to read such a broad request as extending to those "key documents" governing Kelly's benefit determination at issue and used by Valeo to determine his issues on appeal. ECF No. 35, PageID.3337–38. Valeo asserts that it did provide those documents—the SPD for the operative 2011 Plan and his requested calculations, provided on June 5, 2019, along with the operative 2011 Plan and actuarial reduction table provided to Kelly a few months earlier, on January 4, 2019 with the appeal decision. *Id.* Valeo asserts that the Plan contains all of the operative terms governing Kelly's eligibility for pension benefits, the table details the actuarial reduction factors that are to apply to his Deferred Vested Benefit Pension, and the SPD explains in lay terms how the terms of the Plan are applied, including how to

determine Accredited Service in light of the June 30, 2011 plan freeze amendment and how to apply the actuarial reduction factors. ECF No. 40, PageID.3534.

Kelly does not dispute that he possessed these documents as of June 5, 2019. A plan administrator's provision of the applicable policy and the summary plan description generally satisfies the administrator's obligation to provide "plan documents" pursuant to 29 U.S.C. § 1024(b)(4). *See, e.g., Buford v. Gen. Motors, LLC*, No. 4:16-CV-14465, 2022 WL 258453, at *13 (E.D. Mich. Jan. 26, 2022) (Berg, J.) (holding "GM complied with § 1024 by timely providing the requested plan and SPD documents," and "[c]laim file documents are not required to be produced."); *Baxter v. Briar Cliff Coll. Grp. Ins. Plan*, 409 F. Supp. 2d 1108, 1129–30 (N.D. Iowa 2006) (finding plaintiff received all "Plan documents" when she had previously received the policy and summary plan description, rejecting her claim that she should have been provided the same documents *again* in response to her request or that other documents existed).

The Court finds that Kelly was provided with all documents Valeo had a duty to provide. Kelly's request for "all Pension Documents" does not pass the "clear-notice test" for documents beyond those provided by Valeo. *See Cultrona*, 748 F.3d at 707 (finding that plaintiff's "broadly phrased" request for "all documents comprising the administrative record

and/or supporting Nationwide's decision … would not pass the clear-notice test for most of the documents identified.").

Kelly's complaint that he did not receive PPP documents or the 2015 Valeo Lighting Salaried Pension Plan documents in response to his May 19, 2019 request fails to change this finding. The PPP is a separate non-qualified plan from the retirement plan at issue, and the 2015 Valeo Lighting Salaried Pension Plan did not govern Kelly's benefits, as his employment terminated in 2012. *See* 2015 Plan, ECF No. 31-69, PageID.2252 ("Employees who terminated their employment before the effective date of this amendment and restatement shall … be subject to the terms of the Plan as in effect on the date of their termination of employment."). Moreover, Valeo discussed "the non-qualified plan, the Valeo Lighting Pension Preservation Plan" in its response to Kelly's document request, in connection with Kelly's request for calculations of Kelly's earnings, but Kelly did not follow up with a request for that separate plan document. *See Goldstein v. Grp. Ins. Plan for Admin. & Mgmt. Emps. of Fairchild Rep. Co.*, 940 F. Supp. 474, 481 (E.D.N.Y. 1995), *aff'd*, 99 F.3d 101 (2d Cir. 1996) (administrator's decision to send plaintiff 1983 SPD rather than the 1987 version because plaintiff's employment ceased before the 1987 version was issued was reasonable).

Kelly fails to explain how the allegedly missing documents impacted Valeo's determination regarding his retirement benefits, or how he has been prejudiced by not receiving the documents. *See Bartling*, 29

F.3d at 1068–69; *Briggs v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 1:16-CV-1197, 2018 WL 3326857, at *2 (W.D. Mich. July 6, 2018), *aff'd*, 774 F. App'x 942 (6th Cir. 2019) (denying penalties or attorney's fees and costs where plaintiff "has not shown that she was prejudiced, and there is no indication that the other Defendants would have taken any different position with regard to [plaintiff's] claim for benefits if she had received the full AD&D policy sooner.").

Kelly's § 1132(c) claim therefore will be **DISMISSED**.[4]

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Judgment, ECF No. 35, will be **GRANTED**, and Plaintiff's Motion for Judgment, ECF No. 36, will be **DENIED.**

---

[4] Valeo also argues that Kelly should be collaterally estopped from relitigating the value of his Plan benefits because when litigating his divorce in the Superior Court of Justice in Ontario, Canada, he took the position that the total value of his pension under the Plan was $191,735 CAD, which would equate to $148,786.36 USD, but he now seeks $436,457.60 USD just for benefits due from July 26, 2019 to March 2024. ECF No. 3332–33. Because the Court is dismissing Kelly's claim for benefits under § 1132(a)(1)(B), it will not address this argument.

Plaintiff's claim for PPP benefits therefore will be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies, and his remaining claims will be **DISMISSED WITH PREJUDICE.**

This is a final order and closes the case.

**IT IS SO ORDERED.**

Dated: August 31, 2026

/s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE